IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM R. GEMMELL and
EILEEN S. GEMMELL,                          06cv1024
                                            ELECTRONICALLY FILED

        Plaintiffs,

    v.

GILL HALL V.F.D., CHIEF ALVIN S. FELIX,
and John Doe fire fighters,

        Defendants.

**MEMORANDUM OPINION**

## I.    Introduction

This is a civil rights action brought pursuant to 42 U.S.C. § 1983.  Plaintiffs allege that

Defendants, acting "under color of state law," violated their constitutional rights under the First

and Fourteenth Amendments, by harassing Plaintiffs and retaliating against them after they

complained about noise and disruptive behavior by volunteer firemen at the Gill Hall Volunteer

Fire Department.  Currently pending before this Court is Defendants' motion for summary

judgment (doc. no. 45), and Plaintiffs' response thereto.  After careful consideration, and for the

reasons that follow, this Court will grant Defendants' motion for summary judgment.

## II.    Factual Background

The facts as set forth in the parties' statements of facts can be fairly summarized as

follows[1]:

_____

[1]This Court's Case Management Order of December 4, 2006 (doc. no. 20) requires the
parties to file a joint concise statement of material facts but, instead, the parties have each filed
separate statements of facts.  Thus, the Court has assimilated the parties' respective statements of
facts (although, Plaintiffs included their statement of facts as a very brief subsection of their
response to Defendants' motion for summary judgment) and has gleaned the following factual

Plaintiffs, William and Eileen Gemmell, live across the street from Defendant Gill Hall Volunteer Fire Department ("Volunteer Fire Department").  Plaintiffs allege that, in 2005, they began to suffer a pattern of nightly harassing activities from the Volunteer Fire Department's firefighters.  The harassment, as stated by Plaintiffs, consisted of the following: "(1) blaring air horns and sirens; (2) flood lights; (3) shouting; (4) stalking; (5) staring; (6) littering; (7) public displays of sexual fornication; (8) public urination; (9) parties with alcohol consumption with civilians; (10) females sunbathing; (11) curse words exclaimed; (12) nightly cookouts; and (13) personal vehicles peeling out."  Plaintiffs complained initially to the John Doe firefighters about the activities,[2] and then to Chief Alvin S. Felix ("Chief Felix"), the police, the Borough of Jefferson Hills ("Borough"), the fire commissioner, and the Borough Mayor, allegedly with each occasion of complaint leading to more personal and intensified forms of harassment.

On August 1, 2006, Plaintiffs filed a Complaint against Defendants alleging violations of their civil rights pursuant to 42 U.S.C. § 1983 and subsequently filed an Amended Complaint which Defendants moved to dismiss.  At the Case Management Conference on December 4, 2006, the Court granted Plaintiffs leave to file a Second Amended Complaint to allege a custom or policy of the Borough and that the Volunteer Fire Department/Individual Defendant were acting "under color of state law"[3] and thus rendering Defendants' motions to dismiss (doc. nos. 9 and 11) moot.  Defendants, Gill Hall Volunteer Fire Department and Defendant Borough filed a motion to dismiss Plaintiffs' Second Amended Complaint arguing that Plaintiffs have failed to

background.

[2]Defendant John Doe Firefighters have yet to be identified.

[3]Claims against Defendant Borough of Jefferson Hills were dismissed by stipulation on January 25, 2007.  (Doc. No. 33).

provide any factual allegations in support of a custom or policy of the Borough, or any factual support for a conspiracy to retaliate claim. This Court denied Defendants' motion and on May 23, 2007, Defendants filed this instant motion for summary judgment.

Defendants also filed a reply (doc. no. 69) to Plaintiffs' response to Defendants' motion for summary judgment (doc. no. 63), in which, they requested the Court to disregard Plaintiffs' "statement of facts" as set forth in their brief in opposition to summary judgment, on the ground that Plaintiffs failed to file a separate statement of material facts, as required by local rule and this Court's practices and procedures. The Court will deny Defendants' request.

The Court, however, notes that it has given Plaintiffs and their counsel enlargements of time and generous leeway regarding compliance with this Court's rules, practices and procedures, and has attempted to facilitate settlement by referring them to United States Magistrate Judge Francis X. Caiazza to conduct settle conferences. See, e.g. Orders of Court dated March 6, 2007, May 30, 2007, and June 22, 2007. The Court's generosity cannot, however, extend so far as to excuse the lack of substance in Plaintiffs' response to the motion for summary judgment, which is devoid of reference to any precedent or meaningful discussion of application of the law to the facts. Indeed, Plaintiffs' entire "argument" section consists of about one full page, eleven sentences, consisting mostly of bold conclusionary statements without citation of authority or any attempt to apply the governing law to the facts Plaintiffs believe to have been presented.[4]

---

[4]In its entirety, Plaintiffs' "Argument" is as follows:

Plaintiff agrees with the principles behind the cases cited by Defendant, but disagrees with their application in this case.

The record and all reasonable assumptions therein, provide convincing evidence of persons acting under color of state law acting unreasonably and abusing fire hall property and

### III.    Standard of Review

Summary judgment, under Fed. R. Civ. P. 56(c) is appropriate "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." *Woodside v. School Dist. Of Philadelphia Bd. Of

Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), quoting *Foehl v. United States*, 238 F.3d 474, 477 (3d

Cir. 2001) (citations omitted).  Deciding on a summary judgment motion requires that the court

"view the evidence . . . through the prism of the substantive evidentiary burden" in order to

ascertain "whether a jury could reasonably find either that the plaintiff proved his case by the

quality and quantity of the evidence required by the governing law or that he did not." *Anderson

v. Consolidated Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002), quoting *Anderson v. Liberty*

_____

equipment to harass Plaintiff and retaliate against their exercise of free speech. The actions of
defendant are unreasonable and are not subject to qualified immunity.
       Chief Felix admits that the fire hall receives states grants and receives public money
through a fire tax. He concedes there are no policies policing the exact conduct Plaintiff
complains of. Felix admits that there is a basis for Plaintiff's complaints and even has an idea
what firefighters are harassing Plaintiff. "Ex A."
       Plaintiff stands by his log as the best evidence of daily harassment. The activities Plaintiff
wants addressed are those occurring on firefighter property and with fire fighting equipment.
"Ex. B." These activities (shining lights, blowing horns) are "illegitimate" as in they are
retaliation for free speech when done late at night or for extended periods of time.
       Plaintiff allegations of retaliation are substantiated by neighbor, Kelly Hyde, who suffered
a similar pattern and practice of harassment. Exhibit D.
       The harassment complained of herein violates the Substantive Due Process Clause of the
Fourteenth Amendment because it would certainly shock the conscience of reasonable members
of the community.
       A genuine issue of material fact exists and Plaintiff First Amendment (free speech
without retaliation) and Fourteenth Amendment (substantive due process) claims must not be
dismissed.

Plaintiff's [sic] Response to Defendants [sic] Motion for Summary Judgment and Statement of
Facts (doc. no. 63), at Section VIII, pp. 13-14.

*Lobby, Inc.*, 477 U.S. 242, 254 (1986).

Where the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' – that is pointing out to the District Court – that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998), quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994).

In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor .' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)." *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir.2004.) See also *Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001) (court must view facts in the light most favorable, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party).

## IV.   Discussion

Defendants have moved for summary judgment on the basis that there is no record

evidence to support Plaintiffs' Section 1983 claim of conduct "under color of state law" and on the basis that Plaintiffs have not succeeded in showing that their substantive due process rights have been violated.  Defendants also argue that Plaintiffs' "takings" claim is not ripe, the evidence provided does not establish a taking of Plaintiffs' property, and finally, that Defendant Chief Felix is entitled to qualified immunity.

(a)     Liability under 42 U.S.C. § 1983

    (i)     Did Defendants Act Under Color of State Law?

Section 1983 provides that "every person who, under color of [state law] subjects, or causes to be subjected, any . . . person within the jurisdiction [of the United States] to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law [or] suit in equity."  42 U.S.C. § 1983.  It is well established that Section 1983 itself does not create substantive rights, but provides a vehicle by which violation of rights created by the Constitution or federal law may be vindicated.  *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979); *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 907 (3d Cir. 1997).

A plaintiff asserting civil rights violations under Section 1983 must establish that the defendant acted under color of state law to deprive him or her of a right secured by the United States Constitution or the laws of the United States. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995).  Furthermore, "as the 'under color of state law' requirement is part of the prima facie case for § 1983, the plaintiff bears the burden of proof on that issue."  *Id.* at 638 (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).  For a Section 1983 claim to survive a motion for summary judgment, there must be a genuine issue of fact as to whether the defendant (1)

acted under color of state law; and (2) deprived the plaintiff of a federal right.  *Id.* at 633.

As explained in *Groman*, the key question is whether Defendants "have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *Id.*  There are three discrete tests established by the Supreme Court for the determination of state action, namely the 'traditional exclusive government function' test, the 'close nexus' test and the 'symbiotic relationship' test.

*Mark v. Borough of Hatboro*, 51 F.3d 1137 (3d Cir. 1995), discusses the three tests:  the first test  inquires whether "the private entity has exercised powers that are traditionally the exclusive prerogative of the state" (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004-05 (1982)). The second test inquires whether "the private party has acted with the help of or in concert with state officials."  *Id.* (quoting *McKeesport Hospital v. Accreditation Council for Graduate Medical Ed.*, 24 F.3d 519, 524 (3d Cir. 1994)).  The third test inquires whether "[t]he State has so far insinuated itself into a position of interdependence with . . . [the acting party] that it must be recognized as a joint participant in the challenged activity" or in other words asks whether there is a symbiotic relationship.  *Id.*  (quoting *Krynicky v. University of Pittsburgh*, 742 F.2d 94, 98 (3d Cir. 1984)) (internal citations omitted).  In other words, state action has been determined by asking whether the actor is performing a traditional governmental function, by asking if the injury is uniquely enlarged by exercise of governmental authority, and by examining the level of the actor's reliance on governmental assistance and benefits.  *Edmonson v. Leesville Concrete Co., Inc.,* 500 U.S. 614, 621 (1991).

Defendants argue that the alleged harassment activities were not conducted "under color of state law" but instead, were purely "private actions" (forms of socializing) that are not related

to the performance of their official firefighting duties.  Plaintiffs argue that Defendants are state

actors[5] who proceeded to harass them by masking the actions complained of as legitimate

firefighting activities.  In the present case, the Court will examine each of the aforementioned

tests in turn.

With respect to the 'traditional exclusive government functions' test, firefighting has been

deemed to be a traditional exclusive government function in Pennsylvania.  Courts have

consistently recognized volunteer fire departments as engaging in a public function and volunteer

firefighters as state actors.  See *Mark*, 51 F.3d at 1145-1146 and 1148 (volunteer fire department

deemed state actor due to state's provision of resources and the establishment of the duty to

extinguish fires as a public duty); *Tallon v. Liberty Hose Co. No. 1*, 336 Pa. Super. 530, 485 A.2d

1209 (1984) (volunteer fire department held to be state actor and liable under Section 1983).

Similarly, the Court finds that Defendants are state actors under the second test, the close-

nexus test.  The activities complained of, (i.e. the blaring of sirens and horns and the use of flood

lights), does fall under the scope of exercised power "made possible only because the wrongdoer

is clothed with the authority of state law."  Furthermore, Chief Felix attested to the social aspect

of firefighting, which was encouraged as a way of fostering the 'esprit de corps' amongst the

firefighters.  Doc. No. 64, Exhibit A at 44-45 (firefighters could be present at the Volunteer Fire

Department at any time of the day for "details, meetings, training, . . . attend  barbeques, or to

---

[5]The Fourteenth Amendment requirement of "state action" has been equated to the
Section 1983 "under color of state law" principle.  In other words, behavior that qualifies as 'state
action' will also qualify as action "under the color of state law."  *Mark*, 51 F.3d at 1141-1142
(" 'under color' of law has consistently been treated as the same thing as the 'state action'
required under the Fourteenth Amendment . . . state action requires an inquiry into whether 'there
is a sufficiently close nexus between the State and the challenged action of [the regulated entity]
so that the action of the latter may be fairly treated as that of the State itself.' ")

socialize" with training, at times, occurring after midnight along with the use of sirens, horns, fire truck lights).

Finally, with respect to the symbiotic-relationship test, the Court finds Defendants to be state actors and rejects Defendants' characterization of the alleged harassment activities as mere "private actions" done while socializing.  Indeed, Defendants' receipt of state grants, the existence of a Borough fire tax, and the fact that Chief Felix submits fire records to State and Federal authorities (all of which fall under the third test of " the state so far insinuating itself into the position of interdependence with the [acting party]," illustrate an interdependence between the Defendants and the State.  See *Krynicky*, 742 F.2d 94, 98 (universities deemed to be state actors since the state gave them financial support, set a yearly tuition rate, and gave notice of providing future financial support).[6]  See also *Mark*, 51 F.3d at 1148 (Defendant Volunteer Fire Company, Enterprise, deemed to be a state actor "its agreement with the Borough provide[d] Enterprise with . . . more financial benefits.")  Thus, the first prong of the test for a claim under Section 1983 is satisfied as the Court finds Defendants' alleged conduct was "under the color of state law" for a Section 1983 claim.

    (ii)    <u>Were Plaintiffs Deprived of a Constitutional Right</u>?

        (a)    <u>Were Plaintiffs Deprived of their Substantive Due Process Rights</u>?

Plaintiffs assert that Defendants violated their  Fourteenth Amendment substantive due process rights by engaging in acts that amounted to an invasion of privacy/intrusion upon

---

[6]The Court also notes that although volunteer fire companies in Pennsylvania are not regulated by one comprehensive statute, there are statutory provisions that deal with various facets of volunteer fire companies such as the funding provisions under 72 P.S. § 3943 et seq. (Volunteer Loan Assistance), 39 P.S. § 6942.101 (the Volunteer Fire Company and Volunteer Ambulance Service Program), and 53 P.S. § 8501 et seq. (the Volunteer Firefighter Relief Association Act).

seclusion.  Defendants argue that Plaintiffs have failed to allege a constitutional violation and their claim is at best, one of nuisance under state or local law and that Plaintiffs have not produced any evidence of violation of a federally protected right.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV.  The Supreme Court has stated that the "touchstone of due process is protection of the individual against arbitrary action of government."  *Allen v. Pennsylvania Soc. for Prevention of Cruelty to Animals*, 2007 WL 1454514, at *11 (M.D.Pa. 2007) quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998).

The elements of a substantive due process claim are (1) the deprivation of a fundamental property interest or right and (2) governmental deprivation of that property or right interest in a manner that is arbitrary or shocks the conscience.  *El Malik v. City of Philadelphia*, 2007 WL 984455, at *6 (E.D.Pa. 2007) (citing *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 140 (3d Cir. 2000)).

In this case, Plaintiffs state that, "[t]he harassment invades Plaintiff's home every night and morning with extreme and excessive lights, and sounds that rattle and shake Plaintiff's windows, and obscene language, regularly occurring after midnight on a nightly basis, past 3:00am."  Second Amended Complaint, p. 5.  In other words, Plaintiffs are arguing that by 'cloaking' Defendants John Doe firefighters and Chief Felix with the authority to engage in harassment, Defendant Volunteer Fire Department was able to, "invade Plaintiffs' privacy/intrude upon their seclusion" and violate their Fourteenth Amendment substantive due process rights.

Defendants argue that Plaintiffs have not established the deprivation of a constitutional right.  They assert that Plaintiffs' claim of a "generalized right to privacy" does not fall into the 'zones of privacy' that have been recognized by the Supreme Court.  Defendants' Brief in Support for Summary Judgment (doc. no. 46), p. 8.

"In discussing the right of privacy, the Third Circuit in *Doe v. Southeastern Pennsylvania Trans Auth.*, 72 F.3d 1133, 1137 (3d Cir.1995), observed that '[a] § 1983 action cannot be maintained unless the underlying act violates a plaintiff's Constitutional rights . . . When the underlying claim is one of invasion of privacy, the complaint must be 'limited to those [rights of privacy] which are 'fundamental' or 'implicit in the concept of ordered liberty.' " *Korf v. Feldenkreis*, 1999 WL 124388, at *4 (E.D.Pa. 1999).  The Court agrees with Defendants that the implied constitutional protection for privacy has been extended in the first instance, to limit government regulation which impinges on an individual's right to autonomous decision-making on certain issues, and in the second instance to prevent the disclosure of personal matters. Plaintiffs have failed to show that Defendants' alleged harassment activities implicate the Fourteenth Amendment right to privacy.  Moreover, the imprecision with which Plaintiffs have pled this count makes it exceedingly difficult to assess the validity of the alleged constitutional violation as Plaintiffs have made no attempts to support their claimed violation of privacy with case law that would indicate that the facts of this case, as set forth in their complaint, would justify their claim of substantive due process violations.

As stated earlier, the substantive due process analysis also requires examining whether the governmental deprivation occurred in a manner that is arbitrary or "shocks the conscience" of the court. What "shocks the conscience" of the court is " 'only the most egregious official

conduct.' " *Eichenlaub*, 385 F.3d at 285.  "Since the 'exact degree of wrongfulness necessary to

reach the 'conscience-shocking' level depends upon the circumstances of a particular case,' [the

Court will] evaluate the conditions under which a defendant acted in order to ascertain the

relevant standard of culpability."  *Kaucher v. County of Bucks*, 455 F.3d 418, 426 (3d Cir. 2006)

(quoting  *Miller v. City of Philadelphia*, 174 F.3d 368, 375 (3d Cir.1999)).  See *Mark*, 51 F.3d at

1153 n. 13 (Volunteer Fire Company Enterprise's and the Borough's actions in failing to

psychologically screen firefighter-turned-arsonist did not constitute action that would "shock the

conscience")*; Ye v. United States*, 484 F.3d 634 (3d Cir. 2007) (act of publicly employed doctor

telling injured patient that he was alright with nothing to worry about did not constitute egregious

conduct that would 'shock the conscience'); *Miller v. City of Philadelphia,* 174 F.3d 368, 376

(3d Cir.1999) (social worker's decision to examine plaintiff's children, leading to a removal

order, upon a day care personnel's report that child abuse was suspected did not shock the

conscience)*; Fagan v. City of Vineland*, 22 F.3d 1296, 1305 n. 5 (3d Cir.1994) (accidents and

injuries resulting from police chase did not constitute conduct that "shocks the conscience");

*County of Sacramento*, 523 U.S. 833 (police officers held not liable for the death of a suspect

they pursued in a high-speed chase because the officers did not intend to harm the suspects; their

conduct did not "shock the conscience").  If the conduct of the various officials described in the

authority cited above did not "shock the conscience" of the court, this Court cannot consider

Defendants' conduct herein as "shocking the conscience."

        In this instant case, Plaintiffs have once again, exhibited their flippant disregard for case

law and have failed to provide support establishing that Defendants' alleged conduct is egregious

and "shocks the conscience."  They merely offer a conclusory statement asserting that, "[t]he

harassment complained of herein violates the Substantive Due Process Clause of the Fourteenth Amendment because it would certainly shock the conscience of reasonable members of the community." Doc. no. 63, p. 14. Indeed, the standard for the second portion of a substantive due process claim is that the governmental conduct violates due process when it "shocks the conscience **of the court**," not the 'reasonable members of the community' as put forth by Plaintiffs.

   (b)  <u>Did Plaintiffs Retaliate Against Plaintiffs for Exercising their First</u>

      <u>Amendment Right to Petition</u>?

   In order to establish a retaliation claim under the First Amendment, Plaintiffs must prove (1) that they engaged in constitutionally-protected activity; (2) that Defendants responded with retaliation; and (3) that the protected activity caused the retaliation. *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 282 (2004). "The threshold requirement is that the plaintiff identify the protected activity that allegedly spurred the retaliation." *Id.* In order to show causation, the plaintiff must demonstrate that "his protected conduct was a substantial motivating factor for the defendant's actions." *Anderson v. Vaughn*, 125 F.3d 148, 163 (3d Cir.1997).

   In this instant case, Plaintiffs allege that Defendants have engaged in a campaign of harassment and intimidation in retaliation against Plaintiffs for exercising their First Amendment right to petition. They refer to a series of complaints that they made to various officials, all of which allegedly led to an escalation of the harassment activities. Plaintiffs complained to Chief Felix, the Borough Mayor, the local police, to a local newspaper, to Jefferson Borough Council, the State Fire Commissioner, the Governor's office, and the Community Service Director of Pennsylvania. The Court finds that Plaintiffs have shown the existence of an interest protected

by the First Amendment.  The Supreme Court has consistently held that an individual's right of access to court is protected by the First Amendment's clause granting the right to petition the government for grievances. See, e.g., *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510, (1972) ("the right to petition extends to all departments of the Government. The right of access to the courts is indeed but one aspect of the right of petition.")

This Court acknowledges that Plaintiffs were engaged in constitutionally protected speech.  The next prong requires showing that Defendants' responded with retaliation.  Plaintiffs allege that many of their complaints were ignored with the harassment escalating after their complaints.  Indeed, Chief Felix acknowledged Plaintiff Mr. Gemmell's complaints to him and stated that initially he did not issue any disciplinary measures.  Chief Felix did, however, have meetings with the firefighters about the complaints, and at the second meeting, warned members to be present at the Volunteer Fire Department only when necessary.  Chief Felix also stated that the Borough Mayor and the Police Chief had relayed Plaintiff Mr. Gemmell's complaints to him and he was in the process of narrowing down the identities of the individuals that Plaintiff Mr. Gemmell had described.  Even so, Plaintiffs have not offered any evidence to support their bare assertions that any of the alleged actions were a direct response to their complaints.  It is well established that a supervisory official's mere failure to act in the face of allegedly unconstitutional conduct committed by a subordinate cannot be the basis for imposition of Section 1983 liability.  See *Rizzo v. Goode*, 423 U .S. 362, 376 (1976) (failure to act does not equate to an affirmative action or to personal involvement in the deprivation of plaintiff's constitutional rights).  Moreover, Plaintiffs have also not provided support to establish the causal link between Defendants' alleged retaliation and Plaintiffs' complaints.

-14-

(c)   <u>Did Plaintiffs Suffer a "Taking"?</u>

Defendants argue, that to the extent that Plaintiffs are raising a Fifth Amendment "takings" claim, it is not ripe as they have not pursued state-prescribed procedures for obtaining compensation.  Motion for Summary Judgment, 9-10. Plaintiffs have continually used such language as the "de facto taking of Plaintiff's once peaceful home" and the "willful and malicious taking of . . . [Plaintiffs']  previously peaceful residence."  Brief in Opposition to Dismiss Plaintiffs' Second Amended Complaint (doc. no. 28, p.3) and their Second Amended Complaint (p. 6), respectively.   Nonetheless, they have also stated that they  "concede there is no literal Taking claim . . . [and they] pled a Taking in the figurative sense, meaning the Defendants have taken the peace and quiet of Plaintiff's home on a daily basis for the past two years."  Brief in Opposition to Dismiss Plaintiffs' First Amended Complaint (doc. no. 15, p. 3).  Because Plaintiffs explicity state that they are not raising a Fifth Amendment "takings" claim, the Court need not and does not address it.

(ii)   <u>Liability barred due to Qualified Immunity</u>

As previously noted, Defendant Chief Felix moved for summary judgment on qualified immunity grounds.  Qualified immunity is a form of protection from civil damages for government officials performing discretionary functions.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In determining if qualified immunity applies, the following questions must be answered: (1) whether Plaintiffs have alleged the deprivation of an actual constitutional right, and if this is the case, (2) whether the right was clearly established at the time of the alleged violation.  *Eddy v. Virgin Islands Water and Power Authority*, 256 F.3d 204, 208 (3d Cir. 2001).  If the facts, so viewed, do not establish a violation of a constitutional right, the inquiry ends, and

-15-

the plaintiff cannot prevail. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). If the facts do establish

such a violation, the next step is to determine whether the right violated was "clearly established"

at the time of the alleged offense. *Id.*  The right is 'clearly established' if "its outlines are

sufficiently clear that a reasonable officer would understand that his actions violate the right."

*Sterling v. Borough of Minersville*, 232 F.3d 190, 193 (3d Cir. 2000); See also *Nicholas,* 227

F.3d at 139-40 (3d Cir. 2000) ("To prevail on a non-legislative substantive due process claim, 'a

plaintiff must establish as a threshold matter that he has a protected property interest to which the

Fourteenth Amendment's due process protection applies.' ") (quoting *Woodwind Estates, Ltd. v.*

*Gretkowski*, 205 F.3d 118, 123 (3d Cir. 2000)).

Since Plaintiffs have not alleged the deprivation of a clearly established constitutional

right and have failed the first prong of the test, the Court need not consider whether the right

allegedly violated was clearly established under the circumstances of this case.  *Saucier*, 533

U.S. at 201.  Chief Felix, is therefore entitled to qualified immunity from suit in his individual

capacity.

**V.     Conclusion**

Because Plaintiffs have failed to proffer competent and sufficient evidence to support any

of their claims, Defendants' motion for summary judgment must be granted.  An appropriate

order will follow.